STATE of Iowa, Appellee,

v.

Anthony Orlando WALKER, Appellant.

No. 92–938.

Supreme Court of Iowa.

Oct. 20, 1993.

Curt Krull of Nick Critelli Associates, P.C., Des Moines, for appellant.

Bonnie J. Campbell, Atty. Gen., Richard J. Bennett, Asst. Atty. Gen., Yalonda Lofton, Student Legal Intern, John P. Sarcone, County Atty., and Daniel C. Voogt, Asst. County Atty., for appellee.

Considered by HARRIS, P.J., and CARTER, LAVORATO, NEUMAN, and ANDREASEN, JJ.

HARRIS, Justice.

This is a constitutional challenge to Iowa Code chapter 723A (1993), the "criminal street gangs" statute. The challenge, grounded on claims of vagueness, overbreadth, due process, and as an ex post facto application of the law, was rejected by the trial court. We affirm.

The parties stipulated to the minutes of the county attorney's information. The minutes stated that defendant Anthony Walker and three of his friends encountered four other persons who were across a Des Moines street. Walker and his friends were members of the Vice Lords street gang and the others were members of the Black Gangster Disciples. These were rival street gangs.

Each group began shouting at the other while flashing hand signs signifying gang affiliation. Activities escalated until Walker and his friends retreated to a house where the Vice Lords were known to meet. The confrontation continued there until Walker and the other Vice Lords emerged from the house. Walker appeared with a sawed-off shotgun and was handed shells for the weapon by another member. After further verbal exchanges, Walker leveled the gun at the group of Black Gangster Disciples and fired three to five shots. The gunfire damaged a car and struck one of the gang members in the face. This quickly ended the altercation.

After interviewing the Black Gangster Disciples, the police arrested Walker and his friends. All were charged with terrorism and criminal gang participation. Walker pled guilty to terrorism and stipulated to the evidence of criminal gang participation mentioned in the county attorney's information. Walker waived a jury trial on the criminal gang participation charge and it was tried to the bench with a resulting verdict of guilty. Walker then brought this appeal, assailing the constitutionality of the criminal gang participation statute.

Our review of the constitutional issues raised by Walker is de novo. *State v. Niehaus*, 452 N.W.2d 184, 187 (Iowa 1990).

I. Walker's first challenge to the statute[1] is his claim that it is void for vagueness

---

1. Iowa Code chapter 723A states:
   **723A.1 Definitions.**
   As used in this chapter, unless the context otherwise requires:
   1. *"Criminal acts"* means any of the following or any combination of the following:
      *a.* [Controlled substance violations.]
      *b.* [Robbery or extortion.]
      *c.* [Terrorism.]
      *d.* [Going armed with intent.]
      *e.* [Tampering with witnesses or jurors.]
      *f.* [Forcible felony.]
   2. *"Criminal street gang"* means any ongoing organization, association, or group of three or more persons, whether formal or informal, having as one of its primary activities the commission of one or more criminal acts, which has an identifiable name or identifying sign or symbol, and whose members individually or collectively engage in or have engaged in a pattern of criminal gang activity.
   3. *"Pattern of criminal gang activity"* means the commission, attempt to commit, conspiring to commit, or solicitation of two or more criminal acts, provided the criminal acts were committed on separate dates or by two or more persons who are members of, or belong to, the same criminal street gang.
   **723A.2 Criminal gang participation.**
   A person who actively participates in or is a member of a criminal street gang and who willfully aids and abets any criminal act committed for the benefit of, at the direction of, or in associ-

under the fifth and fourteenth amendments to the United States Constitution and article I, section 9 of the Iowa Constitution.

"Vagueness arguments arise from the due process provisions of the fifth and fourteenth amendments to the United States Constitution and article I, section 9, of the Iowa Constitution." *State v. Todd,* 468 N.W.2d 462, 465 (Iowa 1991). "The root of the vagueness doctrine is a rough idea of fairness." *Id.* In *Todd* we cited *Grayned v. City of Rockford,* 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222, 227–28 (1972), as saying that:

> It is a basic principle of due process that an enactment is void for vagueness if its provisions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application.

"To withstand a constitutional attack, a penal statute must satisfy two standards: (1) it must give a person of ordinary intelligence fair notice of what is prohibited; and (2) it must provide an explicit standard for those who apply it." *Todd,* 468 N.W.2d at 465. Nevertheless "the Constitution does not require impossible standards; all that is required is that the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." *Roth v. United States,* 354 U.S. 476, 491, 77 S.Ct. 1304, 1312, 1 L.Ed.2d 1498, 1511 (1957).

■ Walker's due process vagueness challenge is to be considered, not facially, but as applied to him. A person "who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Village of Hoffman Estates v. Flipside,* 455 U.S. 489, 494–95, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362, 369 (1982), *see also City of Panora v. Simmons,* 445 N.W.2d 363, 366 (Iowa 1989). Walker may only attack those portions of the statute which are applied to him.

■ Our first question, then, is whether the portion of the gang statute applied to Walker gives a person of ordinary intelligence fair notice of what is prohibited. Under section 723A.2, such a person will be found guilty of a class "D" felony if he or she (1) "participates or is a member of a criminal street gang" and (2) "willfully aids and abets any criminal act committed for the benefit of, at the direction of, or in association with any criminal street gang."

In his challenge, Walker points only to these words and ignores the definitions provided for them in section 723A.1. These definitions include "criminal street gang" which is (1) any ongoing organization, association, or group of three or more persons, whether formal or informal," and (2) "having as one of its primary activities the commission of one or more criminal acts," and (3) "which has an identifiable name or identifiable sign or symbol," and (4) "whose members individually or collectively engage in or have engaged in a pattern of criminal activity." The statute then carefully defines "pattern of criminal activity." It is clear the legislature went to great lengths in defining a violation under this statute. The definition is highly specific, not vague or unclear, in its intent and scope. We think Walker was given notice which would have been sufficient to a person of ordinary intelligence. The first element of the test was satisfied.

■ Our second question is whether the statute provides an explicit standard for those who apply it, a question inseparable from the first. To the degree a statute gives sufficient notice to an accused, it also necessarily gives law enforcement personnel and courts the same standards for its application.

ation with any criminal street gang, commits a

class "D" felony.

We think the statute, through its extensive definitions, provides ample explicit standards for its application. This was the holding regarding a similar statute in *People v. Gamez,* 235 Cal.App.3d 957, 286 Cal.Rptr. 894 (1991). Walker's vagueness challenge is without merit.

■ II. The trial court was also correct in rejecting Walker's claim that the statute is overbroad in violation of the first and fourteenth amendments to the United States Constitution and article I, section 20 of the Iowa Constitution. Walker's overbreadth challenge is a facial one. A statute is overbroad, for constitutional purposes, if it forbids not only conduct constitutionally subject to proscription, but also actions ordinarily deemed to be constitutionally protected. *Todd,* 468 N.W.2d at 465.

Walker's contention is that the statute sweeps into its ambit conduct generally protected by the freedom of association right found in the first amendment. The contention ignores a key element of the offense. To support a conviction the accused must also be shown to aid and abet in an actual criminal act. Mere association is insufficient. For this reason, the facial attack fails.

■ III. Walker separately argues that the statute violates constitutional guarantees of due process and fundamental fairness. In part this assignment is based on his claim of vagueness, a contention we have already rejected.

He also contends due process is violated because a person could be punished for crimes committed by someone else in the past. Even if his interpretation is correct, it did not occur here. Walker was convicted of criminal gang participation based on the underlying charge of terrorism against him personally, not on the basis of crimes of others. He cannot in this way borrow contentions that might be urged by others. To do so would improperly allow a due process facial challenge. The same is true with regard to Walker's third contention under this assignment, that the gang statute violates certain rules of evidence. Because no such rule is impacted on Walker, he lacks standing for this contention.

■ IV. Finally, Walker contends the gang statute is an ex post facto law, in violation of article I, section 9 of the United States Constitution and article I, section 21 of the Iowa Constitution. "The ex post facto clause ... forbids application of a new punitive measure to conduct already consummated where it operates to the detriment or material disadvantage of the accused." *State v. Quanrude,* 222 N.W.2d 467, 469–70 (Iowa 1974). "Accordingly, a punitive measure is ex post facto if it punishes past conduct which was not criminal when it occurred." *Id.*

Walker argues that one essential element necessary for a conviction under the gang statute is the commission of crimes or criminal acts of two or more other members of the gang. Because these acts might have occurred prior to the enactment of the statute, Walker argues, a defendant could be punished for gang membership activity that was legal at the time.

■ This argument fails on two grounds. First, there is no assertion that Walker was affected in this way. The prior crime used in his case was his own act of terrorism, concededly committed after the enactment of the statute. Thus Walker again mounts a facial challenge to which he lacks standing. In order for a retroactively applied change in the law to amount to an ex post facto measure, the change must operate to the detriment of the accused person. *Miller v. Florida,* 482 U.S. 423, 430, 107 S.Ct. 2446, 2451, 96 L.Ed.2d 351, 360 (1987).

The ex post facto argument also fails on logical grounds. At the time of a statute's enactment all are on constructive notice of its contents. With the adoption of the statute Walker was deemed to have known that, should he aid and abet in a crime in association with a street gang, he would be punished if prior criminal acts had been committed by the gang. He would not be punished for their acts, but rather for his current act of aiding and abetting.

**AFFIRMED.**